**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**(EASTERN DIVISION)**

| | |
|---|---|
| _____ ) | |
| ) | |
| ) | |
| Keson Industries, Inc. ) | |
| ) | **Civil Action No.: _____** |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **Demand For Jury Trial** |
| Johnson Level & Tool Mfg. Co., Inc., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**COMPLAINT FOR PATENT INFRINGEMENT AND UNFAIR COMPETITION**

Plaintiff, Keson Industries, Inc. ("Keson"), by its attorneys, alleges as follows:

1.       This is an action for patent infringement under the patent laws of the United

States, Title 35, United States Code,  directed to Johnson Level & Tool Mfg. Co., Inc.'s

("Johnson") manufacturing, marketing, distributing, using, importing, offering to sell, and/or

selling of measuring wheels such as, but not limited to, its model numbers: 1827-0115, 1830-

0200, 1826-0012, 1830-0100, and 1826-0004, constituting one or more acts of infringement, and

further directed to Johnson's inducing others to infringe, United States Patent No. 6,892,470

(hereinafter the " '470 patent"), a copy of which is included herein as **Exhibit A**, and United

States Patent No. 7,131,216 (hereinafter the "216 patent"), a copy of which is included herein as

**Exhibit B**.

2.       This is also an action for: (1) unfair competition arising under the Lanham Act,

Title 15 U.S.C. § 1125(a); (2) unfair competition in violation of Illinois common law; (3)

violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1,

et seq.; and (4) violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, et seq., all resulting from Johnson's marketing, distributing, importing, offering to sell, and/or selling of measuring wheels such as, but not limited to, its model numbers: 1827-0115, 1830-0200, 1826-0012, 1830-0100, and 1826-0004.

## PARTIES

3.      Keson is a corporation organized and existing under the laws of, and incorporated in, the state of Illinois, with a principal place of business located at 810 Commerce Street, Aurora, Illinois 60504.

4.      Upon information and belief, Johnson is a corporation existing under the laws of Wisconsin with a principal place of business at 6333 W. Donges Bay Road, Mequon, Wisconsin 53092.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement under 35 U.S.C. § 271, unfair competition under 15 U.S.C. § 1125(a) and Illinois common law, and deceptive business and trade practices under 815 ILCS 505/1, et seq., and 815 ILCS 510/1, et seq.

6.      Jurisdiction and venue are proper in this district pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367, 1391, 1400(b) and 735 ILCS 5/2-209.

7.      Upon information and belief, Johnson regularly transacts business within this district in a substantial, continuous and systematic way, including but not limited to, regularly shipping and selling infringing products, and unfairly and deceptively marketing its products to residents in Illinois and in this district.

8.      This Court has personal jurisdiction over Johnson by virtue of all of the

2

commercial activity in this district listed above, including but not limited to, Johnson's regular

conduct of business in this district, and more particularly, Johnson's sale and marketing of the

accused infringing products in this district.

## NATURE OF THE CASE

### BACKGROUND

9.      Keson refers to and incorporates herein each of the preceding paragraphs 1-8 as if

fully set forth herein.

10.     Keson is a leader in the measuring device supply industry in the U.S. and Keson

is known for its line of Keson branded measuring wheels, including but not limited to its model

numbers RR112, RR318N, and MP301, aspects of which Johnson has unlawfully copied as

explained in further detail below.  Keson's sales of these measurement wheels since 1992 have

exceeded 1 million units.

11.     Keson has for decades offered its measuring wheels, with their unique function

and ornamented aspects, to customers throughout the U.S. and has exclusively sold its measuring

wheels and promoted the same through its U.S. distributors, at trade shows, and through its

extensive distribution of written and electronic advertising materials in the U.S. marketplace.

12.     Keson had a long-term business relationship with Johnson dating back to 2006,

during which Keson supplied its measuring wheels for sale under Johnson's own brand.

13.     At all times Keson controlled the design, production, quality, and distribution of

its measuring wheels by itself or through its business partners and licensees.

14.     Johnson advised Keson on November 29, 2012 that it would no longer be

purchasing measuring wheels from Keson and, upon information and belief, Johnson has begun

marketing a new line of measuring wheels, including but not limited to model numbers 1827-

0115, 1830-0200, 1826-0012, 1830-0100, and 1826-0004 (collectively hereinafter the "new line"), under the Johnson brand that are not designed, manufactured, approved, or distributed by Keson.

15.     Upon information and belief, Johnson has begun marketing its new line of measuring wheels, some of which are covered by one or more of Keson's patents, without prior consultation with or authorization from Keson.

16.     Upon information and belief, Johnson's new line of measuring wheels has uncannily incorporated unique ornamental features of the Keson measuring wheels.

17.     Upon information and belief, Johnson's new line of measuring wheels are likely to cause confusion among consumers, or to cause mistake, or to deceive as to the affiliation, connection, as to the origin, sponsorship, or approval by Keson.

18.     Photographic examples of Keson's measuring wheels, with their unique ornamental features described above, are attached as **Exhibit C**.

19.     Photographic examples of Johnson's new line of measuring wheels, with ornamental features that are uncannily similar to those of the Keson measuring wheels described above, are attached as **Exhibit D**.

20.     Photographic examples of Keson's measuring wheels, with their unique ornamental features described above, are compared to photographic examples of the new line of Johnson's measuring wheels in **Exhibit E**.

21.      Upon information and belief, Johnson has intentionally incorporated the unique ornamental features of the Keson brand of measuring wheels and has knowledge of Keson's patents covering one or more of its measuring wheels.

## THE ASSERTED PATENTS

22.     The first asserted patent, the '470 patent, is entitled "Wheeled Distance Measuring Device" and issued on May 17, 2005 to Keson, as assignee of inventors R. Brian Olson and Robert E. Hutchinson.

23.     Johnson has infringed and continues to infringe the '470 patent by making, selling, offering to sell, importing and/or using measuring wheels that embody the patented invention, and Johnson will continue to do so unless enjoined by this Court.

24.     Upon information and belief, Johnson makes, sells, offers to sell, and/or uses measuring wheels throughout the United States, imports measuring wheels into the United States, and induces others to use said measuring wheels, including within the Northern District of Illinois, that infringe the '470 patent.

25.     Keson has owned the '470 patent throughout the entire period of Johnson's infringing acts and still owns the '470 patent.

26.     Upon information and belief, Johnson's actions have been willful and deliberate and in disregard of Keson's lawful rights under the '470 patent.

27.     The second asserted patent, the '216 patent, is entitled "Distance Measuring Apparatus" and issued on November 7, 2006 to Keson, as assignee of inventor Mark Nepil.

28.     Johnson has infringed and continues to infringe the '216 patent by making, selling, offering to sell, importing and/or using measuring wheels that embody the patented invention, and Johnson will continue to do so unless enjoined by this court.

29.     Upon information and belief, Johnson makes, sells, offers to sell, and/or uses measuring wheels throughout the United States, imports measuring wheels into the United States, and induces others to use said measuring wheels, including within the Northern District of Illinois, that infringe the '216 patent.

5

30.     Keson has owned the '216 patent throughout the entire period of Johnson's infringing acts and still owns the '216 patent.

31.     Upon information and belief, Johnson's actions have been willful and deliberate and in disregard of Keson's lawful rights under the '216 patent.

## COUNT ONE: INFRINGEMENT OF U.S. PATENT NO. 6,892,470

32.     Keson incorporates paragraphs 1 through 31 above by this reference, as though fully set forth herein.

33.     Upon information and belief, Johnson manufactures, uses, imports, offers to sell, sells, and induces others to use measuring wheels that infringe one or more claims of the '470 patent in violation of 35 U.S.C. §§ 154(a) and 271.

34.     Upon information and belief, Johnson's infringement of the '470 patent has been and continues to be deliberate and willful, and such infringement will continue unless Johnson is enjoined by this Court.

35.     As a consequence of Johnson's infringement complained of herein, Keson has been damaged and will continue to sustain damages by such acts in an amount to be determined at trial and will continue to suffer irreparable loss and injury.

## COUNT TWO: INFRINGEMENT OF U.S. PATENT NO. 7,131,216

36.     Keson incorporates paragraphs 1 through 35 above by this reference, as though fully set forth herein.

37.     Upon information and belief, Johnson manufactures, uses, imports, offers to sell, sells, and induces others to use measuring wheels that infringe one or more claims of the '216 patent in violation of 35 U.S.C. §§ 154(a) and 271.

38.     Upon information and belief, Johnson's infringement of the '216 patent has been and continues to be deliberate and willful, and such infringement will continue unless Johnson is enjoined by this Court.

39.     As a consequence of Johnson's infringement complained of herein, Keson has been damaged and will continue to sustain damages by such acts in an amount to be determined at trial and will continue to suffer irreparable loss and injury.

## COUNT THREE: FEDERAL UNFAIR COMPETITION

40.     Keson incorporates paragraphs 1 through 39 above by this reference, as though fully set forth herein.

41.     Prior to Johnson's first sale of its new line of measuring wheels, Keson introduced into the marketplace novel, unique, and inherently distinctive measuring wheel designs, namely the look and feel of the Keson measuring wheels and referred to herein as the "Keson Trade Dress."

42.     Keson is the owner of all right, title, and interest in and to the Keson Trade Dress, including the right to bring suit for past, present, and future infringement, and to collect past, present, and future damages.

43.     Keson has continuously used the Keson Trade Dress to designate its products.

44.     Keson has developed a local and national reputation and a high degree of goodwill associated with its products that incorporate the Keson Trade Dress.

45.     As a result of the long, continuous, and widespread use, promotion and advertising of the Keson Trade Dress, it has become associated with Keson, and has also acquired a secondary meaning, and has become an asset of substantial value as a symbol of Keson, its quality name, its quality services, its quality products, and its goodwill.

46.     The Keson Trade Dress is distinctive.

47.     The Keson Trade Dress is nonfunctional.

48.     Upon information and belief, since at least November of 2012, Johnson has
marketed, offered for sale, and/or sold its measuring wheels, including its model numbers 1827-
0115, 1830-0200, 1826-0012, 1830-0100, and 1826-0004, in this District and throughout the
United States.  True and correct pictures of the accused products marketed on Johnson's website
are attached as **Exhibit F**.

49.     Johnson's accused measuring wheels have the same look and feel as the look and
feel of the Keson Trade Dress, as shown in the attached **Exhibit E**.

50.     Johnson's accused measuring wheels share significant similarities with and
infringe upon Keson's strong and distinctive Trade Dress.  Moreover, the accused measurement
wheels will directly compete with the Keson's measurement wheels that incorporate the Keson
Trade Dress.

51.     Upon information and belief, Johnson intentionally advertises, offers for sale, and
sells in a manner designed to confuse the public into mistaking the Johnson accused
measurement wheels with the Keson measurement wheels with the Keson Trade Dress.  As such,
Johnson's accused measurement wheels falsely represent to the trade and customers that
Johnson's accused measurement wheels originate from Keson, and/or that Johnson and its
accused measurement wheels are in some manner affiliated with Keson.

52.     Upon information and belief, due to the striking similarities between Johnson's
accused measurement wheels and the Keson measurement wheels with the Keson Trade Dress,
there is a likelihood of confusion by customers and others who deal with Johnson or the accused
measurement wheels as to the source of the goods offered by Johnson and its customers.

53.     Upon information and belief, Johnson has intentionally and willfully infringed Keson's Trade Dress by passing off the accused measurement wheels as those of another, causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of the Johnson accused measurement wheels.

54.     Upon information and belief, Johnson has intentionally and willfully represented that accused measurement wheels have sponsorship, approval, characteristics, and benefits that they do not have from Keson.

55.     Upon information and belief, Johnson has intentionally and willfully represented that the accused measurement wheels are of a particular standard and quality on par with Keson's Trade Dress and that the accused measurement wheels are the same style or model.

56.     Upon information and belief, Johnson has profited from its use, offer for sale and sales of measurement wheels similar in look and feel to the Keson measurement wheels depicted in **Exhibit C**.

57.     The Keson Trade Dress was first used by Keson long before Johnson first marketed and sold its infringing measurement wheels.

58.     Johnson has and continues to offer for sale and sell measurement wheels similar in look and feel to Keson's Trade Dress embodied in the Keson brand of measurement wheels.

59.     Upon information and belief, when Johnson first began manufacturing, using, offering for sale, and selling its infringing measurement wheels, Johnson knew that Keson had long been using its Keson Trade Dress and that Keson owned the Keson Trade Dress.

60.      Upon information and belief, Johnson has profited from its use, offer for sale, and sales of infringing measurement wheels similar in look and feel to measurement wheels depicted in **Exhibit C.**

9

61.     Johnson's advertising, use, and offer for sale of the infringing measurement wheels depicted in **Exhibit F**, and designs similar thereto, falsely describe and represent Johnson as being sponsored by, approved by, or affiliated with Keson.  Johnson has caused, with knowledge of such false designation of origin or description or representation, such designs to be used in interstate commerce.

62.     Johnson has willfully promoted its businesses in interstate commerce using a confusing simulation of the Keson's Trade Dress in such a manner so as to falsely designate an origin or an association with Keson, with the Keson Trade Dress, and with Keson's goodwill, so as to cause confusion or mistake among purchasers as to the true origin, source, sponsorship, or affiliation of Johnson's goods, all to Johnson's profit and to Keson's monetary damage.  Keson has been irreparably harmed by Johnson's use of such false designation and misrepresentation.

63.     Johnson's acts, as set forth above, constitute unfair competition, false designation or origin, and false description in violation of 15 U.S.C. §1125(a), Section 43(a) of the Lanham Act.

64.     Johnson will, if not enjoined by this Court, continue its acts of unfair competition by the use of the false designation and false representations set forth above, which acts have caused, and will continue to cause Keson immediate and irreparable harm.  Pursuant to 15 U.S.C. §1116 and Fed. R. Civ. P. 65(a), Keson is entitled to an Order of this Court enjoining Johnson's unlawful activities.  Keson has no adequate remedy at law.

65.     As a result of Johnson's conduct set forth above, Keson is entitled, pursuant to 15 U.S.C. §1117, to a judgment for: (1) Johnson's profits; (2) damages sustained by Keson; (3) treble damages; (4) such sum as the Court deems just; (5) attorneys' fees; (6) costs of this action; and (7) interest.

## COUNT FOUR: UNFAIR COMPETITION IN VIOLATION OF ILLINOIS COMMON LAW

66.     Keson incorporates paragraphs 1 through 65 above by this reference, as though fully set forth herein.

67.     Johnson's acts, as set forth above, constitute unfair competition, false designation or origin, and false description in violation of Illinois common law.

68.     Johnson will, if not enjoined by this Court, continue its acts of unfair competition by the use of the false designation and false representations set forth above, which acts have caused, and will continue to cause Keson immediate and irreparable harm.  Keson is entitled to an Order of this Court enjoining Johnson's unlawful activities.  Keson has no adequate remedy at law.

69.     As a result of Johnson's conduct set forth above, Keson is entitled to all relief afforded to it under Illinois common law, including, but not limited to, attorneys' fees, and for any such other relief as the Court deems equitable and just.

## COUNT FIVE: VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

70.     Keson incorporates paragraphs 1 through 69 above by this reference, as though fully set forth herein.

71.     Johnson's acts, as set forth above, constitute unfair competition, false designation or origin, and false description in violation of 815 ILCS 505/*et seq*.

72.     Johnson will, if not enjoined by this Court, continue its acts of deceptive business practices and fraud by the use of the false designation and false representations set forth above, which acts have caused, and will continue to cause Keson immediate and irreparable harm.

Keson is entitled to an Order of this Court enjoining Johnson's unlawful activities. Keson has no adequate remedy at law.

73.     As a result of Johnson's conduct set forth above, Keson is entitled to all relief afforded to it under the Illinois Consumer Fraud Act including, but not limited to, attorneys' fees, and for any such other relief as the Court deems equitable and just.

### COUNT SIX: VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

74.     Keson incorporates paragraphs 1 through 73 above by this reference, as though fully set forth herein.

75.     Upon information and belief, Keson alleges that the foregoing conduct amounts to an unlawful and/or unfair business practice by Johnson within the meaning of the Illinois Uniform Trade Practice Act 510/et seq.

76.     As a result of Johnson's conduct set forth above, Keson is entitled to all relief afforded to it under the Illinois Uniform Deceptive Trade Practices Act including, but not limited to, attorneys' fees, and for any such other relief as the Court deems equitable and just.

### REQUEST FOR RELIEF

WHEREFORE, Keson respectfully requests judgment in its favor and against Johnson as follows:

(a)     A judgment that Johnson has infringed the '470 patent through its manufacture, importation, use, offers to sell, and sales of measurement wheels;

(b)     An order preliminarily and permanently enjoining Johnson, and all persons acting in concert with Johnson, from infringing the '470 patent through the making, using, selling, offering for sale, marketing or distributing any product the use of which infringes the '470

patent, prior to the expiration of the '470 patent;

(c)     An award of damages to compensate Keson for infringement of the '470 patent, together with prejudgment interest, costs and disbursements as fixed by the Court;

(d)     An award increasing damages pursuant to 35 U.S.C. § 284 of three times the amount found or assessed for infringement of the '470 patent by Johnson due to the willful and deliberate nature of the infringement;

(e)     Pursuant to 35 U.S.C. § 285, a determination that this is an exceptional case and an assessment of reasonable attorneys' fees;

(f)     A judgment that Johnson has infringed the '216 patent through its manufacture, importation, use, offers to sell, and sales of measurement wheels;

(g)     An order preliminarily and permanently enjoining Johnson, and all persons acting in concert with Johnson, from infringing the '216 patent through the making, using, selling, offering for sale, marketing or distributing any product the use of which infringes the '216 patent, prior to the expiration of the '216 patent;

(h)     An award of damages to compensate Keson for infringement of the '216 patent, together with prejudgment interest, costs and disbursements as fixed by the Court;

(i)     An award increasing damages pursuant to 35 U.S.C. § 284 of three times the amount found or assessed for infringement of the '216 patent by Johnson due to the willful and deliberate nature of the infringement;

(j)     Pursuant to 35 U.S.C. § 285, a determination that this is an exceptional case and an assessment of reasonable attorneys' fees;

(k)     An order that Johnson, its corporate officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with it, be preliminarily and

permanently enjoined and restrained:

(i).      from promoting, selling, or offering to sell its measurement wheels model numbers 1827-0115, 1830-0200, 1826-0012, 1830-0100, and 1826-0004, or any measurement wheels similar in look and feel to the measurement wheels attached as **Exhibit C**; or any other designation or trade dress confusingly similar to the Keson Trade Dress; and

(ii).      from otherwise infringing upon Keson's rights in and to its Keson Trade Dress and from otherwise unfairly competing with Keson in any manner;

(l)      That an accounting be conducted and judgment be rendered against Johnson for:

(i).      all profits received by Johnson from its sales of any and all measurement wheels similar in look and feel to the measurement wheels represented in **Exhibit C** pursuant to 15 U.S.C. §1117 et. seq. and common law; and

(ii).      actual compensatory damages in an amount not presently known, but to be computed during the pendency of this action;

(m)      That such damages assessed against Johnson be trebled as provided by 15 U.S.C. §1117;

(n)      An award of pre- and post-judgment interest as permitted; and

(o)      Such further and other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Keson hereby demands a trial by jury on all issues so triable.


DATED: January 28, 2013          Respectfully submitted,

Keson Industries, Inc.


By its Attorneys,


/s/*John S. Mortimer*
John S. Mortimer

Dean A. Monco
WOOD PHILLIPS
500 West Madison Street, Suite 1130
Chicago, Illinois 60661
Telephone: 312-876-1800
Facsimile: 312-876-2020

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 28th day of January, 2013, I caused a copy of Keson's **COMPLAINT** to be filed by electronic filing. Notice of filing will be sent to all counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/John S. Mortimer*
John S. Mortimer